IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL SALISBURY,

    Plaintiff,

  v.

DETECTIVE MICHAEL WARD, et al.,

    Defendants.

No. C-06-2993 MMC

**ORDER GRANTING BERKELEY OFFICERS' MOTION TO DISMISS; VACATING HEARING**

(Docket No. 51)

    Before the Court is the motion filed November 8, 2006 by defendants Sgt. Michael Dougherty ("Dougherty") and Officer Samantha Speelman ("Speelman") (jointly, "Berkeley officers") to dismiss the claims asserted against them, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the doctrine of qualified immunity. Plaintiff Michael Salisbury ("Salisbury") has filed an opposition to the motion; the Berkeley officers have filed a joint reply. Having considered the papers filed in support of and in response to the motion, the Court finds the matter appropriate for resolution without oral argument, see Civil L.R. 7-1(b), hereby VACATES the December 22, 2006 hearing, and rules as follows.

## BACKGROUND[1]

    On November 1, 2004, Salisbury was walking in a crosswalk across San Pablo Avenue in Berkeley when he jumped out of the way to avoid being hit by a vehicle driven by off-duty Detective Michael Ward ("Ward") of the Union City Police Department. (See First

---

[1] Any statements of fact contained in this section are taken from the complaint and, for purposes of the instant motion only, are presumed true. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

1  Amended Complaint ("FAC") ¶ 7.)  The passenger side mirror of Ward's vehicle struck
2  Salisbury's hand as the vehicle passed.  (See id.)  When Ward yelled at Salisbury,
3  Salisbury fled.  (See id.)  Ward pursued Salisbury first in his vehicle and then on foot, and
4  eventually tackled Salisbury.  (See id.)  According to Salisbury, Ward began punching
5  Salisbury in the head while accusing him of vandalizing Ward's vehicle.  (See id. ¶ 8.)

6  Ward asked an onlooker to call the police, then took the phone and told the operator
7  that he had arrested a suspect and required urgent backup.  (See id. ¶ 9.)  Shortly
8  thereafter, the Berkeley officers arrived on the scene.  (See id. ¶ 11.)  When Ward identified
9  himself as a Union City police officer, Dougherty offered his handcuffs to Ward, who then
10 handcuffed Salisbury and turned Salisbury over to Speelman.  (See id. ¶¶ 11-12.)  Ward
11 then told Dougherty and Speelman that Salisbury had vandalized his vehicle.  (See id. ¶
12 12.)

13 Rita Duarte ("Duarte"), who had been driving the car directly behind Ward at the time
14 of the incident, told Dougherty that she saw Salisbury jump out of the way to avoid being hit
15 by Ward's vehicle and that Salisbury did not vandalize Ward's vehicle.  (See id.)  Duarte
16 additionally told Dougherty that she wanted to file a complaint against Ward.  (See id.)
17 Dougherty responded that she needed to call the Union City Police Department, and noted
18 that the Berkeley officers were "making the arrest" because the incident had happened in
19 Berkeley.  (See id.)  Salisbury alleges that Dougherty "failed to adequately investigate what
20 Duarte told him."  (See id.)  Duarte asked Dougherty why he was arresting Salisbury and
21 stated that if Dougherty was arresting Salisbury, he should also arrest Ward.  (See id. ¶¶
22 13.)  In response, Dougherty stated he was not arresting anyone.  (See id. ¶ 13.)
23 Dougherty told Duarte that he would take a statement from Ward, and that she could follow
24 up with the Union City Police Department.  (See id. ¶ 15.)

25 Speelman drove Salisbury a block from the scene, out of Ward's sight, then "cited
26 and released" Salisbury.  (See id. ¶ 16.)  Salisbury alleges that Speelman "had Ward sign a
27 citizen's arrest form."  (See id.)

28 Shortly after Duarte returned home, she telephoned the Berkeley Police Department

2

and told Dougherty she wanted to give a statement.  (See id. ¶ 17.)  Speelman went to Duarte's home with Officer Stanley Libed, and took statements from both Duarte and her husband, Dr. Maurice Rotbart, who had been with Duarte in Duarte's car at the time of the incident.  (See id.)  Salisbury alleges that Speelman wrote and submitted to the District Attorney's office "a deliberately misleading summary of Duarte's observations."  (See id. ¶ 18.)

Duarte also telephoned the Union City Police Department to make a complaint about Ward.  (See id. ¶ 28.)  Duarte's call was put through to Sgt. Ray Munoz ("Munoz"), who told Duarte that she should speak with Ward's supervisor, Commander Lance Sandri ("Sandri").  (See id.)  According to Salisbury, Sandri is an officer of the Bureau of Narcotics Enforcement, not an officer of the Union City Police Department.  (See id.)  Salisbury alleges Munoz deliberately misdirected Duarte.  (See id.)  When Duarte attempted to tell Sandri what she'd seen, Sandri assertedly told her that other witnesses saw the event a different way, and that an investigation had begun with respect to the vandalism of Ward's vehicle.  (See id.)  Sandri did not ask for Duarte's name or contact information, and when Duarte commented that he did not seem interested in what she had to say and that she might contact the Oakland Tribune, Sandri reportedly stated: "You shouldn't try and intimidate the police."  (See id.)

Salisbury asserts various causes of action against Ward, the Union City Police Department, Sandri, Speelman and Dougherty.  With respect to Speelman and Dougherty, Salisbury asserts the following causes of action: (1) violation of the Fourth Amendment to the United States Constitution as a result of their "assisting in the false arrest and failing to reasonably investigate other information that might tend to demonstrate the innocence" of Salisbury; and (2) "concerted action to deprive plaintiff of his civil rights," in violation of the Fourth Amendment and the Due Process Clause, pursuant to 42 U.S.C. § 1983.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part of the complaint, however, may be considered. See id. Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

**DISCUSSION**

**A. Fourth Amendment**

As noted, Salisbury's first claim against the Berkeley officers is that they violated the Fourth Amendment by "assisting in the false arrest [by Ward] and failing to reasonably

4

investigate other information that might tend to demonstrate the innocence of the Plaintiff." (See FAC ¶ 32.) Salisbury alleges that Ward physically restrained and arrested him prior to the arrival of the Berkeley officers, (see FAC ¶ 7-9), that Ward handcuffed him after the arrival of the Berkeley officers, (see id. ¶ 11), and that the arrest was documented as a citizen's arrest, (see id. ¶ 16). The Berkeley officers argue that Salisbury's Fourth Amendment claim is subject to dismissal because police officers are not liable under § 1983 for taking into custody a person who has been arrested pursuant to a citizen's arrest. For the reasons set forth below, although the Berkeley officers would be entitled to dismissal under California law, federal law is to the contrary.

"Under the California code, private persons may arrest another for offenses committed or attempted in their presence." Meyers v. Redwood City, 400 F.3d 765, 772 (9th Cir. 2005). "A private person making a citizen's arrest need not physically take the suspect into custody, but may delegate that responsibility to an officer, and the act of arrest may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect." Id. (internal quotation and citation omitted). Although "California law gives the officer the choice of making the citizen's arrest or not," there are "powerful incentives to make the arrest." See id. In particular, although "an officer who makes an arrest pursuant to a citizen's complaint is not subject to liability for false arrest or false imprisonment," and "cannot be sued civilly if he makes the arrest and, it turns out, there were no grounds for the citizen's arrest," if "there were grounds for the complaint and the officer failed to take the suspect into custody, the officer is subject to fines or imprisonment." See id. at 772-73. Consequently, under California law, "California courts have held that . . . officers may choose the safe course and simply make the citizen's arrest." See id. at 773.

Federal law is to the contrary, however. The Fourth Amendment requires that a

warrantless arrest based on a misdemeanor[2] "be supported by probable cause to believe that the arrestee has committed a crime." See Arpin v. Santa Clara Valley Transportation Agency, 261 F.3d 912, 924 (9th Cir. 2001) (internal quotation and citation omitted). Such requirement applies even when the arrestee is taken into custody pursuant to a citizen's arrest; "[i]n establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." Id. Where an officer does not "independently investigate" the violation underlying a citizen's arrest, the officer does not have probable cause to arrest. See id. at 920-21, 924-25 (reversing dismissal of Fourth Amendment false arrest claim against police officers based on citizen's arrest where allegations raised inference that officers did not independently investigate asserted violation of law); see also Kuba v. Marine World Joint Powers Authority, 2006 WL 3041234 at *5 (E.D. Cal. Oct. 24, 2006) (denying police officers' motion for summary judgment of qualified immunity on Fourth Amendment claim; holding, relying on Arpin, that a "police officer . . . is not entitled to hide behind a citizen's arrest in place of making a determination of whether probable cause exists").[3]

The Berkeley officers argue that even if they were required to have probable cause

---

[2] Salisbury was charged with a violation of § 10852 of the California Vehicle Code, a misdemeanor. See Cal. Veh. Code §§ 10852, 40000.9 (defining violation of § 10852 as misdemeanor). Section 10852 provides, in relevant part: "No person shall . . . willfully injure or tamper with any vehicle or the contents thereof or break or remove any part of a vehicle without the consent of the owner." See Cal. Veh. Code § 10852.

[3] The Ninth Circuit opinions upon which the Berkeley officers rely, Meyers and Collins v. Womancare, 878 F.2d 1145 (9th Cir. 1989), are distinguishable. In Meyers, a repossession agent sought to make a citizen's arrest of an automobile owner who resisted repossession, but stated that he would not press charges if the automobile owner relinquished the vehicle. See Meyers, 400 F.3d at 768-69. The Ninth Circuit held the police officers did not violate the Fourth Amendment merely by informing the automobile owner that she could choose between relinquishing the vehicle and arrest; no arrest ultimately was made, and the Ninth Circuit did not opine as to whether the officers might have been liable under the Fourth Amendment for making an arrest. See id. at 773. In Collins, the issue was whether a private citizen who makes a citizen's arrest is engaged in state action for purposes of 42 U.S.C. § 1983, see Collins, 878 F.2d at 1149-56; no police officer was a defendant in Collins and the Ninth Circuit did not opine as to the circumstances under which a police officer could be liable under the Fourth Amendment for taking a person into custody pursuant to a citizen's arrest.

before taking Salisbury into custody pursuant to a citizen's arrest, the facts as alleged demonstrate that probable cause existed. The Court agrees.

Salisbury alleges that the Berkeley officers "ignored readily available evidence that exonerated [him] from any liability," and "ignored the evidence that placed liability squarely on . . . Ward." (See FAC ¶ 6). In particular, Salisbury alleges that after Speelman escorted Salisbury to her squad car, Duarte told Dougherty that Salisbury did not vandalize Ward's vehicle but, rather, "jumped out of the way to avoid being hit," and Dougherty "failed to adequately investigate what Duarte told him."[4] (See id. ¶ 12.) There is no allegation, however, that Salisbury's hand did not strike and damage the mirror on Ward's vehicle; Ward and Duarte disagreed only with respect to whether such conduct was intentional. (See id. ¶¶ 7, 8, 12, 17.)

For purposes of the Fourth Amendment, probable cause "exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." See Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003) (internal quotation, alteration, and citation omitted). "The presence of a factual dispute regarding a victim's complaint . . . does not defeat probable cause if: 1) the victim's statements are sufficiently definite to establish that a crime has been committed; and 2) the victim's complaint has been corroborated by either the surrounding circumstances or other witnesses." Id. (emphasis added.) Here, as both Ward and Duarte agreed Salisbury's hand made contact with Ward's vehicle, resulting in damage to the vehicle, and disagreed only with respect to Salisbury's intent, the Court finds, based on the facts as alleged, the Berkeley officers had probable cause to arrest Salisbury. See id.; cf., e.g. Kuba, 2006 WL 3041234, at *5 ("[D]efendants' counsel was unable to identify a single provision of the California Penal Code which [the officers] had reason to believe was violated by plaintiff's conduct.")

---

[4] The police report cited in the complaint states Salisbury refused to give a statement, (see Motion Ex. A), and there is no allegation in the complaint to the contrary. Cf. Arpin, 261 F.3d at 925 (relying, inter alia, on plaintiff's allegation that officer "did not allow [plaintiff] to explain her side of the story").

7

Accordingly, the Berkeley officers' motion to dismiss Salisbury's claim of false arrest in violation of the Fourth Amendment, for failure to state a claim, will be GRANTED.[5]

### B. Conspiracy To Deprive Plaintiff of Civil Rights

Salisbury additionally alleges the Berkeley officers, Ward, and Sandri "are liable for concerted action designed to falsely arrest and/or cause the malicious prosecution of Plaintiff, in violation of the Fourth Amendment to the U.S. Constitution . . . , as well as violation of the Due Process Clause of the U.S. Constitution . . . , pursuant to 42 U.S.C. § 1983." (See FAC ¶ 34.) Salisbury alleges "[t]here was a meeting of the minds among the defendants to ensure that the plaintiff was arrested and subjected to prosecution, despite the lack of evidence against him, because they desired to insulate Det. Ward from liability." (See id.) With respect to the Berkeley officers, Salisbury alleges they participated in the asserted conspiracy by "fabricating the basis of the unlawful detention, arrest and prosecution" of Salisbury, "making defamatory statements" about him, and "[i]gnoring crucial evidence and deliberately failing to take statements from material witnesses (and only belatedly taking statements from Duarte and Rotbart upon their insistence)." (See id.)

The Berkeley officers move to dismiss the conspiracy claim on the grounds that Salisbury has failed to allege specific facts suggesting the existence of a conspiracy, and that the complaint lacks any nonconclusory allegations that the Berkeley officers committed any overt acts in furtherance of the asserted conspiracy.

To establish liability for a conspiracy to violate civil rights, "a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." See Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation and citation omitted). "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." Id. (internal quotation, alteration, and citation

---

[5] As discussed below, however, even if the Berkeley officers lacked probable cause to take Salisbury into custody, they are entitled to qualified immunity on Salisbury's Fourth Amendment claim.

omitted).  "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Id.  Nonetheless, a plaintiff fails to state a claim for such a conspiracy unless he alleges "specific facts" from which an agreement among the defendants may be inferred; "conclusory allegations that [the defendants] conspired" are insufficient.  See Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) (affirming dismissal of § 1983 conspiracy claim); cf. Fobbs v. Holy Cross Health System Corp., 29 F.3d 1439, 1448-50 (9th Cir. 1994), overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131 (9th Cir. 2001) (reversing dismissal of § 1985(3) conspiracy claim; finding allegation of racially motivated conspiracy plus allegation of specific "allegedly discriminatorily motivated overt acts" gave defendants "fair notice as to the specific acts which [plaintiff] contend[ed] demonstrate a conspiracy."

In the instant action, as defendants point out, the allegation of an agreement among the defendants to deprive Salisbury of his constitutional rights is conclusory and unsupported by the facts alleged.  There is no allegation that the Berkeley officers ever had any interaction with Ward before or after the incident in question, nor is there any allegation that the Berkeley officers ever had any interaction with Sandri.  Salisbury sets forth no basis for inferring a conspiracy merely from the fact that the Berkeley officers arrived at the scene, spoke with Ward and Duarte about the incident, and then cited and released Salisbury.

With respect to Salisbury's contention that the Berkeley officers committed overt acts in support of the conspiracy by "fabricating the basis of the unlawful detention, arrest and prosecution" of Salisbury, making defamatory statements about him, and ignoring crucial evidence, (see FAC ¶ 34), the only facts alleged in support of that allegation are that Speelman assertedly prepared a misleading police report after taking a statement from Duarte and Rotbart.  (See id. ¶¶ 17-19.)  The actual police report, however, contains a four-sentence summary of Duarte's statement and further provides that Duarte's statement is

attached thereto.[6] (See Motion Ex. A.) Salisbury, in his opposition, concedes that Duarte's statement was attached to the police report, (see Opp. at 12:2); thus, any error in Speelman's summary would have been immaterial because Duarte's complete statement also was submitted with the police report. Moreover, having compared the police report and Duarte's statement, the Court finds Speelman's brief summary of Duarte's statement is accurate. Because Salisbury concedes Speelman attached Duarte's statement to Speelman's police report, and because there is nothing inaccurate about Speelman's summary of that statement, there is no basis for Salisbury's allegation that Speelman fabricated or ignored relevant evidence or that she defamed Salisbury in her police report.

Accordingly, the Court finds Salisbury has failed to state a claim against the Berkeley officers for conspiracy to deprive him of his civil rights, and will DISMISS the conspiracy claim, pursuant to Rule 12(b)(6), for failure to state a claim.

**C. Qualified Immunity**

The Berkeley officers additionally move for dismissal on the ground they are entitled to qualified immunity.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law'"; defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation and still be entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The first step in the qualified immunity analysis is to ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's

---

[6] The Court may consider the police report in ruling on the instant motion to dismiss because its contents are alleged in the complaint, (see FAC ¶ 7), and no party has disputed its authenticity. See Branch v. Tunnell, 14 F.3d at 454.

conduct violated a constitutional right?" See id. at 201.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.

On the other hand, if a violation could be made out on the allegations, "the next, sequential step is to ask whether the right was clearly established." Id.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. See id. at 202.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.  Defendants "can have reasonable, but mistaken, beliefs as to the facts . . . , for example, and in those situations, courts will not hold that they have violated the Constitution." See id. at 206.  In addition, "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." See id. at 205.  If the defendant's "mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Id.

**1. Fourth Amendment claim**

As discussed above, Salisbury has not stated a claim against the Berkeley officers for false arrest in violation of the Fourth Amendment.  Assuming, arguendo, Salisbury has pleaded a violation of his constitutional rights, however, the Court will proceed to the second step of the qualified immunity analysis: "whether the right was clearly established," i.e., "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

The issue of "whether a reasonable officer could have believed probable cause . . . existed to justify a search or an arrest is an essentially legal question that should be determined by the district court at the earliest possible point in the litigation." Peng, 335 F. 3d at 979 (internal quotation and citation omitted). Here, for all of the reasons set forth above, it would not have been clear to a reasonable officer that his conduct was unlawful under the circumstances presented.  See id. (granting qualified immunity as matter of law

with respect to Fourth Amendment false arrest claim; finding officers reasonably could have believed they had probable cause to arrest for robbery where all witnesses agreed defendant took documents from victim, but disputed whether defendant had permission to do so).  Salisbury cites no clearly established authority holding that an officer lacks probable cause to arrest where all witnesses agree the suspect damaged the property in question and disagree only with respect to whether the damage was intentional.

Accordingly, the Court will GRANT the Berkeley officers' motion to dismiss the Fourth Amendment claim on the additional ground that they are entitled to qualified immunity.

### 2. Conspiracy

As discussed above, Salisbury has failed to state a claim against the Berkeley officers for conspiracy to violate Salisbury's constitutional rights.  Accordingly, there is "no necessity for further inquiries concerning qualified immunity."  See Saucier, 533 U.S. at 201.

### CONCLUSION

For the reasons set forth above, the Berkeley officers' motion to dismiss is hereby GRANTED, and the claims asserted against the Berkeley officers are hereby DISMISSED.

This order terminates Docket No. 51.

**IT IS SO ORDERED.**

Dated: December 19, 2006

MAXINE M. CHESNEY
United States District Judge